UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**LINDA A. HAMPTON**                                                                   **PLAINTIFF**

V.                                                                                      **CASE NO. 1:05CV329**

**REMIGIO SEGURA**                                                                     **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendant Remigio Segura for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Linda Hampton has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is the second lawsuit filed in this court by attorney Linda Hampton arising out of her 2004 conviction for criminal contempt. Hampton was found in contempt by Winston County Circuit Judge Vernon Cotton for her refusal to appear at an August 27, 2004 hearing scheduled by Judge Cotton in an election contest in which Hampton served as counsel. Hampton apparently took offense at a prior hearing having been scheduled for Confederate Memorial Day in April, and she had indicated to the clerk of the court that she "may or may not" attend the hearing which was scheduled for August. Hampton ultimately elected not to attend the hearing, and, following a September 3, 2004 hearing, Judge Cotton found Hampton in contempt. Hampton appealed this ruling, and the Mississippi Supreme Court affirmed Judge Cotton's finding of contempt in a January 5, 2006 decision. See *In re Hampton*, 919 So.2d 949 (Miss. 2006).

By the time of the Supreme Court's ruling, Hampton had already filed two federal lawsuits relating to the dispute between herself and Judge Cotton. The first of these lawsuits involved, *inter alia*, claims asserted by Hampton against a Winston County prosecutor and a justice court judge for their refusal to pursue criminal charges against Judge Cotton and his court reporter Segura arising out of the contempt proceedings. *Hampton v. Winston County*, No. 1:05cv97 (N.D. Miss) (*Hampton I*). On September 5, 2006, this court entered an order dismissing these claims on summary judgment, and, while it declined to sanction Hampton for having filed a frivolous lawsuit, the court noted that it was a close issue as to whether it should do so. *Hampton I*, docket entry [38-1], slip op. at 7. The court now has before it claims asserted directly against Segura which appear to involve some of the same allegations that Hampton originally sought to have criminally prosecuted.[1] Specifically, Hampton alleges that Segura knowingly prepared a transcript of the September 3, 2004 contempt hearing which contained material inaccuracies which, she contends, were designed to prejudice her rights on appeal before the Mississippi Supreme Court.

In its order affirming Judge Cotton's contempt ruling, the Supreme Court noted that Hampton contested the accuracy of the hearing transcript, but the Court concluded that its inquiry was limited to the record before it, observing that:

> Hampton disputes the authenticity of the record and claims that "many of the actual statements in court have been deleted or altered in the transcript of the proceedings." However this Court's review is limited to what appears in the record.

*Hampton*, 919 So.2d at 956, n. 1. The Supreme Court accordingly based its ruling solely on the

---

[1] Apparently recognizing the absolute nature of judicial immunity, Hampton has not filed suit against Judge Cotton himself in this action.

record as submitted.

In the instant lawsuit, defendant appears to concede that a court reporter might be held liable for constitutional violations under 42 U.S.C. § 1983 if he were to knowingly produce a transcript which contained material inaccuracies which served to prejudice a party's rights in an underlying litigation. In seeking summary judgment, defendant instead relies on both procedural and substantive arguments that Hampton's claims against Segura lack merit. As to its procedural argument, defendant relies primarily upon the *Rooker-Feldman* doctrine, which "holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments." *United States v. Shepherd*, 23 F.3d 923, 925 (5th Cir. 1994). Defendant argues that the fact that the Mississippi Supreme Court already considered plaintiff's allegations of a falsified transcript indicates that this action represents a collateral attack upon the state court ruling. In the court's view, defendant's use of such procedural attacks upon the instant lawsuit is problematic, considering that the Supreme Court does not appear to have substantively considered plaintiff's allegations that the transcript was falsified.[2] Indeed, as noted above, the Supreme Court simply held that it was bound by the record before it and made no inquiry whatsoever as to the circumstances of any alleged alteration.

While the court is unaware of any Fifth Circuit authority on point, a recent Seventh Circuit Court of Appeals decision rejected the use of the *Rooker-Feldman* doctrine under

---

[2]The court would also note that, in light of a 2005 U.S. Supreme Court decision, the Rooker-Feldman doctrine now applies only in the "limited circumstances" where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Rowley v. Wilson*, 200 Fed.Appx. 274, 276 (5th Cir. 2006), *citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005).

circumstances similar to the instant one. In *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), the Seventh Circuit noted that while court reporters may not be held liable under § 1983 case for "innocent errors, even if negligent" ... if "the reporters deliberately altered a transcript as part of a conspiracy to defraud a litigant, they can, lacking absolute immunity, be held liable." As to the *Rooker-Feldman* doctrine, the Seventh Circuit held that:

> The claim that a defendant in a civil rights suit "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment" is not barred by the *Rooker -Feldman* doctrine. ... Otherwise there would be no federal remedy other than an appeal to the U.S. Supreme Court, and that remedy would be ineffectual because the plaintiff could not present evidence showing that the judicial proceeding had been a farce ...

*Loubser*, 440 F.3d at 441. As noted by the Seventh Circuit, if federal courts were to apply the *Rooker-Feldman* doctrine under these circumstances, then this would seemingly permit court reporters to knowingly falsify transcripts with something approaching impunity. The court therefore concludes that the *Rooker-Feldman* doctrine is inapplicable here, as are the other procedural objections raised by defendant, including *res judicata* and collateral estoppel. The Mississippi Supreme Court clearly did not consider the merits of plaintiff's allegations of a fraudulent transcript, and to bar the instant action on procedural grounds would therefore be fundamentally unfair.

While the court thus rejects defendant's procedural arguments, this does not serve to remove the court's doubts regarding the substantive merits of this lawsuit. The instant action and the one which preceded it appear to smack of a personal vendetta, and, while the court offers no opinions on the underlying dispute between plaintiff and Judge Cotton and his court reporter, it clearly seems incumbent upon plaintiff to articulate exactly what alterations are present in the

4

transcript at issue herein and why these alterations should be considered to be material. It is unclear to this court whether qualified immunity applies here, since that doctrine ordinarily applies only to "discretionary functions," *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and it is arguable that a court reporter's job involves no discretion. Regardless, it seems clear that establishing fact issues regarding a constitutional violation in the context of a court reporter's transcription function requires much more than merely disputing the accuracy of the transcript in question.

Plaintiff has complained mightily, before the Mississippi Supreme Court and in two separate lawsuits before this court, of the alleged alterations by Segura. The court is now willing to hear plaintiff out on these allegations, but, when given her opportunity to do so, plaintiff is strangely reticent. Indeed, while plaintiff has produced lengthy briefs in each of her lawsuits, her entire argument regarding the materiality of the alleged alterations in this case are as follows:

> Plaintiff has provided affidavits and letters containing statements provided by individuals who were present in the courtroom on September 3, 2004. These individuals witnessed what was actually said. The affidavits verify that material statements set out in the transcript are materially different from those made in the courtroom. These sworn statements, along with Defendant's letter stating that he had reviewed his transcript and found none of the material inaccuracies complained of, provide substantial proof that Defendant produced a transcript containing material inaccuracies and fraudulently altered recordings of the court proceedings submitted as false written statements. Any reasonable court reporter would know that producing a transcript containing material inaccuracies and fraudulently altered recordings of the court proceedings submitted as false written statements into a criminal court transcript was unlawful.

While plaintiff does offer witness statements and excerpts from her arguments at the trial court level, none of this evidence or argument serves to make a persuasive case as to any constitutional violation on the part of Segura.

5

For its part, defendant offers substantial evidence indicating that any alleged inaccuracies in the transcript, even accepted as true, were not material. Defendant notes that, as part of a 2006 motion filed in Winston County Circuit Court, plaintiff requested another transcription of the September 3, 2004 contempt hearing. Court reporter Ginger Brooks was chosen to perform this function, and, in a letter to Judge Cotton dated June 28, 2006, she wrote as follows:

> Dear Judge Cotton,
> I have completed my review of the transcript submitted to me as ordered by the Court. As you know, my assignment consisted of listening to the actual tape recordings and reviewing the written transcript provided by Mr. Mike Segura.
> From my analysis of the submitted tapes and transcriptions, I have noted some changes that were necessary in my opinion to the submitted transcript. However, those corrections I noted do not in any way materially alter the testimony and evidence submitted to the Court for its consideration during the hearing.

Judge Cotton later adopted the findings of Ms. Brooks as his own. While this court is not bound by the views of Ms. Brooks, it has conducted its own review of the exhibits submitted by plaintiff, including the affidavits of the courtroom witnesses, and it agrees with Ms. Brooks' assessment regarding the materiality of any inaccuracies in the transcript. Indeed, it is the court's impression that any such inaccuracies are the sort of mistakes that one might expect as the result of simple neglect or inadvertence, and the court has no reason to suspect that any such inaccuracies were the result of a knowing attempt by Segura to prejudice plaintiff's rights at either the trial or appellate level.

While the court views actions against court reporters for knowing and intentional alterations of transcripts as being potentially cognizable under § 1983, the court also recognizes that such actions implicate very serious public policy concerns which require that this court scrutinize the record to assess, among other things, the materiality of any alleged inaccuracies in

6

the transcript. The court deems it proper to take judicial notice of the fact that court reporters perform a very difficult job, and any violation of § 1983 requires proof of something more than simple negligence. *See, e.g. Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Accordingly, even if this court were faced with a court reporter who was less than skilled at his job, this would not suffice to establish fact issues regarding a constitutional violation under § 1983. It should also be apparent that, while the law requires juries to resolve fact issues, a consideration of the legal materiality of any inaccuracies in a transcript, accepting the allegations of such inaccuracies as true, is one properly made by a judge with the legal training to consider such issues. While the court is unaware of any authority on this issue, it has little doubt that the Fifth Circuit would conclude that district courts considering claims such as the present one should exercise a rather robust screening function to ensure that court reporters performing their jobs to the best of their abilities are not dragged into federal court to defend themselves whenever a dis-satisfied state court litigant wishes to contest the accuracy of a transcript.

In light of the foregoing, this court will not permit an action against a court reporter for allegations such as those herein to go to trial unless a plaintiff is able to produce actual arguments setting forth explicitly what inaccuracies are present in a transcript and to explain exactly how these inaccuracies 1) are material and 2) support a potential finding that the court reporter committed a constitutional violation. In the court's view, it is particularly inappropriate for the plaintiff in this case to rely upon such weak summary judgment evidence, considering that the court has previously found that she brought a separate action arising out of this same controversy which bordered on the frivolous. In light of the foregoing, the court concludes that plaintiff has

failed to establish genuine issues of fact regarding any material alteration in the transcript at issue in this case which might support a finding of a constitutional violation on the part of defendant. Defendant's motion for summary judgment is therefore due to be granted.

It is therefore ordered that defendant's motion for summary judgment [24-1] is granted.

A separate judgment will issue this date, pursuant to Fed. R. Civ. P. 58.

This is the 5th day of July, 2007.

**/s/ Michael P. Mills**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**